**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DOLAH MANSOUR HUSAIN ET AL., | No. 1:25-cv-00512 JLT CDB |
| Plaintiffs, | |
| v. | ORDER DENYING DEFENDANTS' MOTION TO DISMISS |
| MARCO RUBIO, ET AL., | |
| Defendants. | (Doc. 7.) |

## I.    INTRODUCTION

Mohammed Qasem Al-Daeri and Dolah Mansour Husain bring this action against U.S. Secretary of State Marco Rubio, the Embassy of the United States in Djibouti, and the U.S. Department of State, for unreasonable delay in adjudicating and improper expiration of Al-Daeri's visa application under the Administrative Procedure Act, 5 U.S.C. § 706, and the Mandamus Act, 28 U.S.C. §§ 1361, 1651. (Doc. 1.) Defendants move to dismiss both claims pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). (Doc. 7.) For the reasons set forth below, Defendants' motion to dismiss is **DENIED**.

## II.    BACKGROUND

### A.    The Application Process

"There is a two-step process to apply for a fiancé visa." *Mahmood v. Bitter*, No. 2:24-cv-01646, 2025 WL 1529389, at *1 (W.D. Wash. May 29, 2025) (citation omitted.) "First, a U.S.

1

citizen must file a Form I-129F ('K-1') visa petition with the U.S. Citizenship and Immigration Services ('USCIS')." *Id.*; *see also* 8 U.S.C. § 1184(d)(1). USCIS considers the evidence submitted with the visa petition and approves the petition if "satisfactory evidence is submitted by the petitioner to establish the parties have previously met in person within 2 years before the date of filing the petition, have a bona fide intention to marry, and are legally able and actually willing to conclude a valid marriage in the United States within a period of ninety days after the alien's arrival." *Id.* If USCIS approves the visa petition, it is sent to the Department of State's National Visa Center ("NVC") for pre-processing. *Immigrant Visa Process.*, U.S. DEP'T OF STATE, https://travel.state.gov/content/travel/en/us-visas/immigrate/the-immigrant-visa-process/step-1-submit-a-petition/step-2-begin-nvc-processing.html (last visited June 7, 2026). NVC enters the case into consular systems and then physically mails the petition to the U.S. embassy or consulate where the foreign-citizen fiancé lives for in-country processing. *Id.*

"Second, upon approval, the non-citizen beneficiary of the petition must apply for the nonimmigrant visa abroad through the U.S. Consul." *Mahmood*, 2025 WL 1529389, at *1 (citation omitted); 8 U.S.C. § 1202(c). The consular officer must either issue or refuse the visa, and if the visa is refused, the reason for the refusal must be based on legal grounds, such as one or more provisions of the Immigration and Nationality Act 212(a), INA 212(e), INA 214(b) or (f) or (l), INA 221(g), INA 222(g), or other applicable law.[1] 22 C.F.R. § 41.121(a). "When a consular officer knows or has reason to believe a visa applicant is ineligible and refuses the issuance of a visa, her or she must inform the alien of the ground(s) of ineligibility . . . to overcome the refusal." *Id.* at § 41.121(b)(1). A consular officer will refuse a visa under INA 221(g) if:

1. It appears to the consular officer, from statements in the application, or in the papers submitted therewith, that such alien is ineligible to receive a visa or such other documentation under [INA 212(a)], or any other provision of law,

2. The application fails to comply with the provisions of this chapter, or the regulations issued thereunder, or

3. The consular officer knows or has reason to believe that such

---

[1] INA 212(a) and 221(g) are codified as 8 U.S.C. § 1182(a) and 8 U.S.C. § 1201(g), respectively.

2

alien is ineligible to receive a visa or such other documentation under [INA 212(a)], or any other provision of law."

8 U.S.C. § 1201(g). However, "a consular officer may determine that additional information from sources other than the applicant may help establish an applicant's eligibility for a visa. In such cases, refused visa applications warrant further administrative processing." *Admin. Processing Info.*, U.S. DEP'T OF STATE, https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/administrative-processing-information.html (last visited June 8, 2026).

###    B.    Plaintiff's Visa Case

Husain is a U.S. citizen who resides in Bakersfield, California. (Doc. 1 at ¶ 21.) Her fiancé, Al-Daeri, is a citizen of Yemen. (*Id.* at ¶ 17.) Plaintiffs became engaged to marry on December 8, 2021. (*Id.* at ¶ 26.) Shortly thereafter, Husain filed a K-1 visa petition (the "Petition") for Al-Daeri with USCIS. (*Id.* at ¶ 27.) USCIS approved the Petition and forwarded it to the NVC for pre-processing on August 15, 2023. (*Id.* at ¶ 28.) On December 5, 2023, a consular officer at the U.S. Embassy in Dijbouti interviewed Al-Daeri, wherein he applied for a nonimmigrant K-1 visa ("the Application") on the basis that he was Husain's fiancé. (*Id.* at ¶ 30; Doc. 7 at 6–7.) After the interview, the consular officer gave Al-Daeri a form that indicated he had "been found ineligible for an immigrant visa under [INA 221(g)], pending receipt and review of . . . additional evidence to demonstrate [Al-Daeri's] relationship with [Husain]." (Docs. 1 at ¶¶ 30, 31; 1-1 at 76.) The form also included an unchecked box asking whether the "application requires administrative processing before [the U.S. Embassy is] able to determine whether [Al-Daeri is] eligible for a visa" and a checked "Other" box with the handwritten message: "evidence not married." (*Id.*)

On December 6, 2023, Plaintiffs provided additional evidence of their relationship, including photographs together, a reservation confirmation for the hall where their marriage was to take place, and statements from individuals familiar with their relationship. (Doc. 1 at ¶ 32.) For over a year, Plaintiffs and Congressman Vince Fong's office on Plaintiff's behalf, made several attempts to receive a status update on Al-Daeri's case. (Doc. 1-1 at 139–163.) On January 3, 2025, Congressman Vince Fong's office informed Husain that the U.S. State

Department communicated that Al-Daeri's "case was not placed in administrative processing and was refused under section 221(g) because the consular officer believes [Plaintiffs] were already married due to the wedding invitations in Yemen presented at the interview." (*Id.* at 163.)  On January 23, 2025, Defendants changed the Petition's status to "Expired" and terminated the Application. (Doc. 1 at ¶ 35.)  Before terminating the Application, Defendants did not inquire with Husain about her intention to continue to petition for Al-Daeri and did not return the Petition to USCIS for recertification. (*Id.* at ¶¶ 37, 38.)  The consular officer returned the Petition to USCIS on February 28, 2025. (Doc. 7 at 7.)

On April 30, 2025, Plaintiffs filed the complaint pursuant to the APA and Mandamus Act, seeking to compel Defendants to adjudicate the Application and challenge Defendants policies, procedures, and practice relating to the Application's adjudication as an *ultra vires* violation of the APA. (Doc. 1 at ¶ 4.)  On July 7, 2025, Defendants moved to dismiss the complaint, arguing Plaintiffs' claims are moot and the consular non-reviewability doctrine bars this Court's review. (Doc. 7.)

### III.    LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a party may challenge a claim for relief for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1).  "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citation omitted).  A facial attack, for example, "accepts the truth of the plaintiff's allegations but asserts that they are insufficient on their face to invoke federal jurisdiction." *Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 964 (9th Cir. 2020) (internal quotation marks and citation omitted).  Like a motion to dismiss under Rule 12(b)(6), a Rule 12(b)(1) facial attack requires the Court to presume the truth of the plaintiff's factual allegations "and draw all reasonable inferences in his favor." *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009).  "By contrast, a factual attack contests the *truth* of the plaintiff's factual allegations, usually by introducing evidence outside the pleadings." *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 614 (9th Cir. 2016) (internal quotation marks and citations omitted) (emphasis in original).

Under Rule 12(b)(6), a district court must dismiss if a claim fails to state a claim upon

which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion to dismiss, the claimant must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when the plaintiff pleads facts that "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.*  Plaintiffs must "nudge[ ] their claims across the line from conceivable to plausible" or "their complaint must be dismissed." *Twombly,* 550 U.S. at 570.

## IV.    ANALYSIS

Plaintiffs bring their claims under the APA and Mandamus Act.  (Doc. 1 at ¶¶ 127–153.) "Although the exact interplay between the two statutory schemes has not been thoroughly examined by the courts, the Supreme Court has construed a claim seeking mandamus under the [Mandamus Act] 'in essence,' as one for relief under § 706 of the APA." *Indep. Min. Co. v. Babbitt*, 105 F.3d 502, 507 (9th Cir. 1997).  Thus, "when a complaint seeks relief under the Mandamus Act and the APA and there is an adequate remedy under the APA, [the Court] may elect to analyze the APA claim only." *Vaz v. Neal*, 33 F.4th 1131, 1135 (9th Cir. 2022) (citations omitted.)

Plaintiffs allege Defendants violated the APA by unreasonably delaying adjudication and improperly expiring the Application.  (Doc. 1 at ¶ 1–2.)  Plaintiffs request the Court to compel Defendants to issue a final decision on the Application and correct their "failure to reach out to [Husain] to address any concerns that made the consular officer question the intent of [Plaintiffs] to marry" and "failure to return [the Application] to USCIS for revalidation" under APA § 706.[2] (*Id.* at ¶ 132.)  Plaintiffs also allege "Defendants improperly used [8 U.S.C. §] 1201(g) as a basis of removal . . . and is not a final action on the [Application]." (*Id.* at ¶¶ 132–33.)

///

---

[2] Defendants note that "the consular officer returned the petition to USCIS" on February 28, 2025, but Plaintiffs contend "it is unclear on the record when USCIS actually received the petition, and further when the petition was actually updated its online case status system." (Docs. 7 at 7; 13 at 2.)  Regardless, because Defendants did return the Application to USCIS, Plaintiffs' claim is moot.

**A.      Defendants have a Non-Discretionary Duty to Adjudicate the Application**

To succeed on their APA claims, Plaintiffs must show: (1) the agency has a nondiscretionary duty to act; and (2) the agency has unreasonably delayed acting on that duty. *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 62–64 (2004).  While "[c]ourts are split on whether there is a mandatory duty to review and adjudicate immigrant visa applications under § 1202(b), . . . many courts[, including the Eastern District,] have found that the use of the word 'shall' in section 1202(b) indicates a nondiscretionary duty to act." *Alam v. Blinken*, No. 2:24-cv-01103, 2024 WL 4804557, at *4 (E.D. Cal. Nov. 15, 2024).  Courts have applied that same reasoning to the identical language in § 1202(d) governing other documentary evidence of nonimmigrant visa applications.  *Noori v. Rubio*, No. 8:25-cv-00400, 2025 WL 3691400, at *6 (C.D. Cal. Oct. 24, 2025).  The Court joins with other courts in finding § 1202(d) imposes a nondiscretionary duty on Defendants to adjudicate the Application.

**B.      Consular Nonreviewability**

**1.      Defendants have not issued a final decision on the Application.**

Consular nonreviewability reflects that, "[n]ormally a consular official's discretionary decision to grant or deny a visa petition is not subject to judicial review." *Patel v. Reno,* 134 F.3d 929, 931 (9th Cir. 1997) (citations omitted.)  However, the doctrine does not apply where a plaintiff seeks a final decision on their visa application rather than judicial review of a consular decision. *Id.* ("[W]hen the suit challenges the authority of the consul to take or fail to take an action as opposed to a decision taken within the consul's discretion, jurisdiction exists." (citation omitted.))  Further, the mere fact that the State Department has chosen to characterize an action as a "refusal" does not necessarily make it a final decision; rather, "the focus should be on what is *actually* happening[.]"  *Alam*, 2024 WL 4804557, at *4 (citation omitted)(emphasis in original); *see also Mahmood v. Bitter*, No. 2:24-cv-01646, 2025 WL 1529389, at *6 (W.D. Wash. May 29, 2025) (collecting cases of Ninth Circuit courts "considering 'what is *actually* happening' in the case when determining whether a visa adjudication is, in reality, final.")

"Some courts have found that a refusal under [INA] 221(g) fulfills the consulate's duty to adjudicate a visa application."  *Alam*, 2024 WL 4804557, at *5.  "However, the prevailing

position among district courts is that a refusal for administrative processing is not a final decision and therefore does not discharge the agency's obligation to adjudicate visa applications." *Id.* "These courts have considered the contents of the refusal letters, and other factors to find that although consular officials 'nominally' refused the visa application, by determining the visa application required further administrative processing, the visa application remained under consideration and could not 'fairly be described as a final determination.'" *Iqbal v. Blinken*, No. 2:23-cv-01299, 2024 WL 3904959, at *5 (E.D. Cal. Aug. 22, 2024).

In *Mohamed v. Pompeo*, the plaintiffs "received a form letter from the U.S. Embassy in Djibouti indicating generally that their 'visa application is refused' and that 'this decision constitutes a denial of a visa.'" No. 1:19-cv-01345, 2019 WL 4734927, at *4 (E.D. Cal. Sept. 27, 2019). But "of the numerous boxes that could be checked off as a justification for denial, the form letter indicates "Other" with the explanatory handwritten phrase 'administrative processing.'" *Id.* Because of the consular officer's handwritten statement, the *Mohamed* Court disagreed with the Government "that the form letter constituted a final decision and denial," and rather "found the 'administrative processing' designation insufficient to constitute a refusal." *Id.*

In *Alam*, the consular officer requested the plaintiff to complete and submit a Form DS-5535, which "[u]nder the State Department's regulations, a consular officer may [request a visa applicant complete and submit] 'whenever the officer believes that the information provided in Form DS-230 or Form DS-260 is inadequate to determine the alien's eligibility to receive an immigrant visa." *Alam*, 2024 WL 4804557, at *5 (quoting 22 C.F.R. § 42.63(c)). The *Alam* Court reasoned that "[t]his suggests the consular official did not reach a final decision to deny [the plaintiff's] visa application . . . but instead kept it under consideration pending receipt and consideration of the information in her Form DS-5535." *Alam*, 2024 WL 4804557, at *5.

Plaintiffs claim Defendants failed to follow their nondiscretionary duty to issue a final decision on the Application, but Defendants argue "[t]he consular officer adjudicated and refused the [Application] and there is no nondiscretionary action that has not been taken." (Doc. 7 at 4.) Defendants rely on the language in the refusal form stating the consular officer found Al-Daeri ineligible for an immigrant visa under INA 221(g), and that the consular officer did not check the

box on the form to indicate the Application required administrative processing, to argue the consular officer reached a final decision in denying the Application. (Doc. 7 at 11.) However, Defendants overlook that the refusal form caveats the consular officer's finding that Al-Daeri was ineligible for a non-immigrant visa by "pending receipt and review of . . . additional evidence to demonstrate [Al-Daeri's] relationship with [Husain]." (Doc. 1-1 at 76.) Further, though the consular officer did not check the box explicitly stating that the Application required administrative processing, the State Department explains on their website that if "a consular officer [] determine[s] that additional information from sources other than the applicant may help establish an applicant's eligibility for a visa . . . refused visa applications warrant further administrative processing." *Admin. Processing Info.*, U.S. DEP'T OF STATE. While the State Department's website lacks the force of law, it proposes an alternative explanation for the consular officer's conduct. Defendants contend the unchecked box reflects the consular officer's decision that administrative processing was not required, but the guidance provided on the State Department website presents an equally plausible scenario that the consular officer could have opted to skip a redundant explanation already provided elsewhere.

Moreover, the consular officer also checked the "Other" box and wrote "evidence not married." (Doc. 1-1 at 76.) Defendants assert that the consular officer denied the Application on the belief that Plaintiffs were already married, but the consular officer requested additional evidence with the statement "evidence not married." Because the consular officer finding Al-Daeri ineligible for a non-immigrant visa pended receipt and review of additional evidence that Plaintiffs were not married, it logically follows that the consular officer did not reach a final determination of Plaintiffs' marital status, and thus Al-Daeri's visa eligibility, at the time of issuing the refusal notice. Though Defendants deny that the Application was ever placed in administrative processing, the consular officer requesting additional evidence to reach a final decision effectively placed the Application in administrative processing. Thus, Defendants have failed to complete their nondiscretionary duty to issue a final decision on the Application and the consular nonreviewability doctrine does not bar judicial review.

///

8

**2.    Consular nonreviewability bars judicial review of Defendants' decision to base refusal on INA 221(g).**

While consular nonreviewability does not bar the Court from compelling Defendants to issue a final decision on the Application, the doctrine does prevent the Court from reviewing Defendants' decision to base its refusal on INA 221(g). Consular nonreviewability bars judicial review of a discretionary consular decision. *Patel*, 134 F.3d at 931. Plaintiffs' attempt to circumvent this bar by alleging the consular officer improperly refused the Application based on INA 221(g), rather than on one of the grounds of inadmissibility enumerated in INA 212(a). (Doc. 1 at ¶¶ 102–113.) But 22 C.F.R. § 41.121(a) explicitly provides that INA 221(g) is a legal ground for refusing nonimmigrant visa applications. Furthermore, the Ninth Circuit recognized INA 221(g) as a legitimate basis for refusal that triggers consular nonreviewability in *Bechirian v. Blinken*. No. 20-55913, 2022 WL 260052, at *1 (9th Cir. Jan. 27, 2022) ("Even if citation to [INA 221(g)] standing alone was insufficient, the consular officer also determined that Atashian 'failed to provide proof of a credible relationship' with Bechirian.") Though courts have distinguished *Bechiran* where the consular officer in effect refuses the application for administrative processing based on requesting additional information from the plaintiff, *Bechirian* is nonetheless instructive for finding INA 221(g) a sufficient basis for refusal. *See Alam*, 2024 WL 4804557, at *6. Moreover, other courts have expressly rejected Plaintiffs' reasoning and found INA 221(g) "contains no such exclusivity." *See OC Modeling, LLC v. Michael Richard Pompeo*, No. CV 20-1687, 2020 WL 7263278, at *4 (C.D. Cal. Oct. 7, 2020) (quoting *Hussein v. Beecroft*, No. 17-cv-12356, 2018 WL 357717 at *16 (E.D. Mich. July 25, 2018) *affirmed* 782 Fed. App'x. 437 (6th Cir. 2019)). Plaintiffs' fail to address these cases and do not overcome this barrier.

**3.    Defendants were not required to notify Husain.**

Plaintiffs contend consular nonreviewability does not bar judicial review because Defendants failed to follow the required procedures in refusing the Application by not notifying Husain "of any concerns the consular officer has regarding the planned marriage, and confirming with [Husain] whether she still intends to marry the beneficiary *before* returning the petition to

9

USCIS for reaffirmation." (Doc. 13 at 9) (emphasis in original.)  However, Defendants were not required to notify or confirm anything with Husain before returning the petition to USCIS.

Plaintiffs base this requirement in the Foreign Affairs Manual ("FAM"), but neither the section nor quoted language that Plaintiffs cite exists in the FAM.  Rather the pertinent section provides that when facts and circumstances lead a consular officer to "question whether the relationship is bona fide, or which might cause the petitioner to choose not to go forward with the marriage," the consular officer "should first ask the petitioner if they are aware of the circumstances and whether they still wish to proceed with the proposed marriage."  9 FAM 502.7-3(C)(5)(a)(5)(a), (c).  Not only does "should" indicate a discretionary decision by the consular officer, but the at issue notice and confirmation would only apply when the consular officer believed the petitioner may be unaware of critical information that could dissuade them from wishing to proceed with the marriage.  The consular officer here did not learn of any circumstances that Husain was not aware and, in fact, believed Plaintiffs were already married.

**C.    <u>Mootness</u>**

The court lacks subject matter jurisdiction when the controversy before it becomes moot.  *In re Burrell*, 415 F.3d 994, 998 (9th Cir. 2005).  "A case is moot if the issues presented are no longer live and there fails to be a 'case or controversy' under Article III of the Constitution."  *Id.* (citation omitted.)  "The basic question in determining mootness is whether there is a present controversy as to which effective relief can be granted."  *Nw. Env't Def. Ctr. v. Gordon*, 849 F.2d 1241, 1244 (9th Cir. 1988) (citation omitted.)  "If an event occurs that prevents the court from granting effective relief, the claim is moot and must be dismissed."  *Am. Rivers v. Nat'l Marine Fisheries Serv.*, 126 F.3d 1118, 1123 (9th Cir. 1997).  The party asserting mootness "bears the burden to establish that a once-live case has become moot."  *W. Va. v. E.P.A.*, 597 U.S. 697, 719 (2022).

"Courts have found immigration cases moot when a consular officer makes a final decision to grant or deny an applicant's visa application."  *Iqbal*, 2024 WL 3904959, at *5 (citation omitted.)  However, as discussed above, Defendants have not reached a final decision on whether to grant or deny the Application.  Further, Defendant's argument that the Petition

10

expiring moots the case is equally unavailing.  Defendants twice note that a K-1 visa petition, not application, expires four months after its approval under 8 C.F.R. § 214.2(k)(5).  (Doc. 7 at 6, 11.) Defendants cite no authority that a K-1 visa application expires or that an expired petition terminates an application in administrative processing.  Thus, the case is not moot.

## V.   CONCLUSION

For the reasons explained above, Defendants' motion to dismiss, Doc. 7, is **DENIED**.

IT IS SO ORDERED.

Dated:   **June 12, 2026**

UNITED STATES DISTRICT JUDGE

11